UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 26 Cr. 424

JENNIFER PERCIVAL,

Defendant. Plea
------------------------------x

New York, N.Y.
September 14, 2026
3:32 p.m.

Before:

HON. ONA T. WANG,

Magistrate Judge

APPEARANCES

JAMES M. McDONALD
United States Attorney for the
Southern District of New York
BY: JERRY J. FANG, ESQ.
Assistant United States Attorney

BLOCH & WHITE LLP
Attorneys for Defendant
BY: MICHAEL L. BLOCH, ESQ.
CRISTINA ALVAREZ, ESQ.

ALSO PRESENT: CONNOR VERES, FBI Special Agent

(Case called)

THE DEPUTY CLERK: Please state your appearance for the record.

MR. FANG: Good afternoon, your Honor. This is Jerry Fang for the government. I'm joined at counsel table by FBI special agent Connor Veres, and we appreciate the Court's flexibility in scheduling.

THE COURT: I appreciate your flexibility as well. Good afternoon.

MR. BLOCH: Good afternoon, your Honor. Michael Bloch on behalf of Dr. Jennifer Percival, and I'm joined by my colleague Cristina Alvarez.

THE COURT: Good afternoon.

All right. I understand that we are going to be treating Ms. Percival's appearance as an initial appearance and then moving on into a waiver of indictment and then a guilty plea; is that what I understand the order of the proceedings might be?

MR. FANG: That's correct, your Honor.

MR. BLOCH: Correct, your Honor.

THE COURT: Okay. So I am going to start with just the overall explanation of rights, and then we'll move on slowly, and I expect counsel will let me know if I'm missing anything, all right? Just a minute.

All right. Can I have the date and time of arrest,

please.

MR. FANG: Yes, your Honor. Dr. Percival self-surrendered at approximately 9:30 this morning.

THE COURT: All right. I am Judge Wang. You are here because you are charged with certain crimes by an information. Do you have a copy of the proposed information?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. The purpose of today's proceeding is to advise you of certain rights that you have; inform you of the charges against you; appoint counsel, if necessary, but certainly to inform you and advise you of your right to counsel; enter a plea or change of plea; and then decide under what conditions, if any, you can be released.

I am now going to explain certain constitutional rights that you have. You have a right to remain silent. You are not required to make any statements. Even if you have already made statements to the authorities, you do not need to make any further statements. Any statements that you do make can be used against you. You have the right to be released either conditionally or unconditionally pending trial unless I find that there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community.

If you are not a United States citizen, you have the right to request that a government attorney or a law

enforcement official notify a consular officer from your country of origin that you have been arrested. In some cases a treaty or other agreement may require the United States government to give that notice whether you request it or not.

You have the right to be represented by an attorney during all court proceedings, including this one, and during all questioning by the authorities. You have the right to hire your own attorney. If you cannot afford an attorney, I can appoint one today to represent you.

Do you understand your rights as I have just explained them?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And I recognize that Mr. Bloch is appearing today as your retained counsel; is that right?

THE DEFENDANT: Yes, he is. Thank you.

THE COURT: That was a question to Mr. Bloch.

MR. BLOCH: Yes, Judge, that's correct.

THE DEFENDANT: Oh, sorry.

THE COURT: All right. Now I'm going to summarize the charges on the information.

I have before me a Waiver of Indictment form that it appears that you have signed, and a proposed information. Or I guess it's not a proposed information. It's the information. Let me just pull it up.

All right. I have before me a one-count information

that charges you with a felony offense. It's one count of wire fraud, in violation of 18, United States Code, Section 1343.

Counsel, have you received a copy of the information?

MR. BLOCH: Yes, Judge.

THE COURT: And have you reviewed it with your client?

MR. BLOCH: I have.

THE COURT: And Ms. Percival, do you understand the charges against you and the maximum penalties you may face?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. I note that you have signed a Waiver of Indictment. Let me ask you questions about the Waiver of Indictment now.

Did you sign a Waiver of Indictment?

THE DEFENDANT: Yes, your Honor, I did.

THE COURT: And before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes, your Honor, I did.

THE COURT: Do you understand what you are doing?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And do you understand that you are under no obligation to waive indictment?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Do you understand that if you do not waive indictment, if the government wants to prosecute you, they would have to present this case to a grand jury, which may or

may not indict you? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand and realize that by signing this Waiver of Indictment, you have given up your right to have this case presented to a grand jury?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand what a grand jury is?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. And you have seen a copy of the information, right?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: All right. Have any threats or promises been made to you to induce you to waive indictment?

THE DEFENDANT: No, they have not, your Honor.

THE COURT: And so you continue to wish to waive your right to an indictment by a grand jury?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. Counsel, is there any reason why your client should not waive indictment?

MR. BLOCH: No, your Honor.

THE COURT: All right. I find that the Waiver of Indictment has been knowingly and voluntarily made by Ms. Percival. I accept the waiver, and let the record reflect that Ms. Percival has waived the indictment.

Now I think I need to arraign Ms. Percival first before we move to the change of plea, right?

MR. FANG: Correct, your Honor.

THE COURT: All right. And for arraignment purposes, Ms. Percival, are you prepared to enter a plea to the information at this time?

THE DEFENDANT: Yes, I am, your Honor.

THE COURT: And what is your plea?

THE DEFENDANT: I plead guilty, your Honor.

THE COURT: Okay. We'll enter a plea of not guilty, we'll arraign you, and then we'll change your plea.

THE DEFENDANT: Okay.

THE COURT: Is that right?

MR. BLOCH: Correct.

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. So a plea of not guilty will be entered, and the record should reflect that Ms. Percival is now arraigned.

I needed to confirm before I did that, actually, Mr. Fang, Judge Vyskocil has referred the plea to magistrate court, right; to a magistrate judge?

MR. FANG: That's correct, and so——correct, your Honor.

THE COURT: All right. We will now move on to the change of plea, which normally would be the beginning of a

separate proceeding, but we're doing it all together all at once.

THE DEFENDANT: Thank you.

THE COURT: All right. I do also have before me a Consent to Proceed Before a United States Magistrate Judge on a Felony Plea Allocution that you have signed. What this form says is that knowing that you have the right to have your plea taken by a United States district judge, you are agreeing to have your plea taken by a United States magistrate judge. As a magistrate judge, I have the authority to take your plea, with your consent, and you will still be entitled to all of the same rights and protections as if you were before a district judge. Among other things, if you are found guilty, you will be sentenced by a district judge.

Did you sign this Consent to Proceed Before a United States Magistrate Judge voluntarily?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: And before you signed the form, did your lawyer explain it to you?

THE DEFENDANT: Yes, he did, your Honor.

THE COURT: And do you wish to proceed with your plea before a United States magistrate judge?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. I've reviewed the consent form, and your consent is accepted. I'm signing off on it now.

All right. The purpose of this proceeding is to make sure that you understand your rights, to decide whether you're pleading guilty of your own free will, and to make sure you're pleading guilty because you are guilty and not for some other reason. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: If at any time you don't understand any of my questions or if you want to consult with your attorney, just say so, because it is important that you understand every question before you answer.

Before I take your plea, I must ask you a series of questions, and I therefore need to place you under oath. Please raise your right hand.

(Defendant sworn)

THE COURT: All right. Ms. Percival, do you understand that any statements you make here today under oath may be used against you in a prosecution for perjury or for making false statements if you do not tell the truth?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. Please tell me your full name.

THE DEFENDANT: Jennifer Pollack Percival.

THE COURT: And how old are you?

THE DEFENDANT: I am 46 years old.

THE COURT: And are you a citizen of the United States?

THE DEFENDANT: Yes, I am, your Honor.

THE COURT: And are you able to read and write in English?

THE DEFENDANT: Yes, I am.

THE COURT: How far did you go in school?

THE DEFENDANT: I have a PhD in educational leadership and research methodology.

THE COURT: Okay. Are you now or have you recently been under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT: No, your Honor.

THE COURT: And have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: May I confer with my attorney for a moment, please.

THE COURT: Of course.

(Defendant conferring with counsel)

MR. BLOCH: I'm sorry, Judge. Could you repeat the question.

THE COURT: Yes. Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind? And I will also let you know that this is part of the questioning that I need to conduct in a guilty plea allocution in order to assure myself that you are competent to plead guilty at this time.

(Defendant conferring with counsel)

THE DEFENDANT: I see a therapist, your Honor, weekly.

THE COURT: Sorry?

THE DEFENDANT: I see a mental health therapist weekly, your Honor.

THE COURT: All right. And your visits with the mental health therapist do not impact your ability to see or hear or think or make decisions or judgments at this time?

THE DEFENDANT: No, your Honor.

THE COURT: All right. And as you sit here today, are you under the influence of any mind-altering drug or any alcoholic drink?

THE DEFENDANT: No, your Honor.

THE COURT: And are you on any medication?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And the medication that you are on, does it cause any changes or any impact on your ability to see or to hear or to think, to reason, to understand?

THE DEFENDANT: No, your Honor.

THE COURT: Or make decisions for yourself and understand what's going on today?

THE DEFENDANT: No, your Honor.

THE COURT: Have you been able to understand everything that I've said to you so far?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you feel all right today?

THE DEFENDANT: Yes, I do. Thank you.

THE COURT: And you have seen a copy of the information in this case?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: And have you read it?

THE DEFENDANT: Yes, I have.

THE COURT: Do you understand what it says that you did?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And have you had a chance to discuss the charge and how you wish to plead with your attorney?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: Are you satisfied with your attorney's representation of you?

THE DEFENDANT: I am satisfied with my current attorney's representation, yes, your Honor.

THE COURT: All right. Have you had a full opportunity to discuss this case with him?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: And has he told you the consequence of pleading guilty?

THE DEFENDANT: Yes, he has, your Honor.

THE COURT: And are you ready to enter a plea now?

THE DEFENDANT: Yes, I am.

THE COURT: All right. Count One of the information

charges you with commission of wire fraud, in violation of 18, United States Code, Section 1343. How do you wish to plead to that count, guilty or not guilty?

THE DEFENDANT: I plead guilty, your Honor.

THE COURT: All right. With respect to the count charging you with wire fraud, I want you to understand that the maximum penalty——and I'm taking this from the plea agreement dated August 12th——I want you to understand that the maximum penalty is a prison term of 20 years, a maximum term of supervised release of three years, and a maximum fine of the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice what someone other than yourself lost because of the criminal activity, a mandatory special assessment of a hundred dollars, and, in addition, the Court must order you to pay restitution to any victims. Do you understand these maximum penalties that I have just described to you?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: I also note that the plea agreement notes that you also admit to the forfeiture allegation and that you will have agreed to forfeit and will agree to forfeit funds in connection with a money judgment, which I understand will be entered later?

MR. FANG: That's correct, your Honor.

THE COURT: Do you also understand that if as part of

your sentence you are placed on a term of supervised release and you then violated any of the conditions of that release, you could face an additional term of imprisonment? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: That means that the district judge can invoke the term of release previously imposed and return you to prison without giving you any credit for time previously served on post-release supervision.

You also told me earlier that you are a citizen of the United States. By law, I still must tell that if in fact you are not a United States citizen, a guilty plea means that you may be removed from the United States and denied admission to the United States or denied citizenship in the future. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: All right. Just a moment.

The plea agreement also notes that if you are a naturalized citizen of the United States, that a guilty plea may also have consequences with respect to the immigration or the naturalization status.

All right.

MR. FANG: Your Honor, if I may.

THE COURT: Yes.

MR. FANG: For clarity of the record——and I think it's

apparent from the Court's questioning of Dr. Percival, but perhaps it would be appropriate for the Court to also make a further finding as to Dr. Percival's competence to enter a plea.

THE COURT: I usually do that at the end, after I've had a chance to assess Ms. Percival's demeanor through the entire plea proceeding, including after the allocution.

MR. FANG: Understood, your Honor.

THE COURT: Okay. Thank you.

Now I'm going to explain certain constitutional rights that you have. These are rights you will be giving up if you enter a guilty plea. Please listen carefully to what I'm about to say, and if you do not understand something, stop me, and your attorney or I can explain the issue more fully.

Do you understand that you have a right to plead not guilty or, having already pleaded not guilty, to continue in that plea, and that you have a right to a speedy and public jury trial if you wish?

THE DEFENDANT: Yes, I understand, your Honor.

THE COURT: Do you understand that if you plead not guilty and you were to go to trial, you would be presumed innocent and the burden would be on the government to prove your guilt beyond a reasonable doubt? Do you understand that?

THE DEFENDANT: I do, yes, your Honor.

THE COURT: And that means you would not have to prove

you were innocent and you could not be convicted unless a jury of 12 people unanimously agreed that you were guilty beyond a reasonable doubt.

Do you also understand that you would be entitled to be represented by an attorney at all stages, at trial and at every other stage of the proceedings, and if you could not afford to hire one, the Court would provide an attorney to you for free? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that at such a trial, you would be entitled to confront and cross-examine any witness who's called by the government to testify against you, that you would be entitled to testify on your own behalf, that you could call witnesses and present evidence, and that the Court would issue subpoenas at your request to compel witnesses to appear and testify in your defense even if they didn't want to come? Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And do you understand that at a trial, you would not be required to testify against yourself?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you chose not to testify, that could not be used against you.

Do you also understand that if you were convicted at a trial, you would have a right to appeal that verdict to a

higher court?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you enter a guilty plea, you would give up all these rights, including your right to a trial, that you will not be able to withdraw this plea, and that the only remaining step in this case would then be the sentencing?

THE DEFENDANT: Yes, I understand, your Honor.

THE COURT: Do you understand that the decision as to the appropriate sentence in your case will be entirely up to the sentencing judge, and that she will be limited only by what the law requires? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that even if you are surprised or disappointed by your sentence, you will still be bound by your guilty plea?

THE DEFENDANT: Yes, I understand, your Honor.

THE COURT: And finally, if you do plead guilty, you're also giving up the right not to incriminate yourself, and I will ask you questions about what you did in order to satisfy myself that you are actually guilty. By pleading guilty, you will be admitting your factual as well as legal guilt. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And knowing all of this, do you still wish

to plead guilty to Count One of the information?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Have any force or threats been used, either direct or indirect, to influence how you plead today?

THE DEFENDANT: No, your Honor.

THE COURT: All right. I have before me a letter dated August 12, 2026, from the United States Attorney to your attorney, containing a plea agreement. Have you read this letter?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you sign it on the last page?

THE DEFENDANT: Yes, your Honor.

THE COURT: And before you signed it did you discuss it with your attorney?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: Did he explain to you all its terms and conditions?

THE DEFENDANT: Yes, he did, your Honor.

THE COURT: All right. Let me just take another look at this.

Okay. And apart from what is contained in this letter, have any promises been made to you in order to get you to plead guilty?

THE DEFENDANT: No, they have not, your Honor.

THE COURT: In reviewing the plea agreement, I note

that it contains an analysis of how part of our law of sentencing, known as the sentencing guidelines, may impact on any prison term in your case. Based on that analysis, the agreement states that the guidelines sentencing range can be expected to be from 37 to 46 months. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And do you understand that the sentencing judge is not bound by the calculation in the letter and that she will be free to do her own calculation, which may result in a guideline range that is different than the one in the letter?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Do you understand that no matter what sentencing range the sentencing judge believes is called for by the guidelines, that range is just one of many factors that the judge will consider in determining your sentence and that the judge has the discretion to give you a prison sentence below or above that range, anywhere up to the maximum sentence of imprisonment of 20 years? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that under the terms of the plea agreement, if the judge sentences you to a prison term that is 46 months or less, you are giving up your right to appeal that sentence or to challenge it in any other way, such as through a writ of habeas corpus?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you also understand that the plea agreement says that you cannot appeal any fine of $150,000 or less and that you cannot appeal any term of supervised release less than or equal to the statutory maximum or any other condition of supervised release that is imposed by the Court for which you had notice? Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that in this letter, you are also giving up your right to complain if the government withheld evidence from your attorney that would have been helpful to you?

THE DEFENDANT: Yes, I understand, your Honor.

THE COURT: All right. Is your plea voluntary, that is, made of your own free will?

THE DEFENDANT: Yes, it is voluntary.

THE COURT: Have any threats been made to influence how you plead today?

THE DEFENDANT: No, they have not, your Honor.

THE COURT: Did you in fact commit the offense that is charged in the information?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: Before I ask you to tell me what you did, I will ask the government to summarize the elements of the offense and, if they wish, to tell me any evidence that they would have offered at trial.

MR. FANG: Thank you, your Honor.

Count One of the information charges substantive wire fraud, in violation of 18 U.S.C. Section 1343. That count requires the government to prove each of the following three elements beyond a reasonable doubt:

First, the existence of a scheme or artifice to defraud or obtain money or property by means of materially false or fraudulent pretenses, representations, or promises;

Second, the defendant knowingly participated in the scheme or artifice to defraud with specific intent to defraud; and

Third, the defendant used or caused the use of interstate wires in furtherance of the scheme.

The government must also show by a preponderance of the evidence that venue is proper in the Southern District of New York, which includes Manhattan.

As to the evidence at trial, the government's trial evidence would consist of, among other things, the following: Dr. Percival's bank records; search warrant returns for Dr. Percival's email account; as well as live testimony by the administrator of two settlement funds administered in the Southern District of New York.

THE COURT: All right. Ms. Percival, please tell me in your own words what you did that makes you guilty of the charge against you.

THE DEFENDANT: Thank you, your Honor.

In December of 2020, I began the process of applying to the Epstein Victims' Compensation Program.

Around March 26, 2021, following the review of my application and an interview, the EVCP fund transmitted a letter to me informing me that I was not eligible to receive any payment from the EVCP fund.

In February of 2024, I sought permission to apply for compensation from a fund arising from Jane Doe v. JP Morgan Chase Bank. From the state of Florida, I emailed the relevant district court judge and the fund administrator. I submitted an altered copy of the EVCP fund letter, which stated falsely that I had been found to be eligible for compensation from the EVCP fund. In connection with my application to the JPM fund for victims, I represented that the EVCP fund had paid me approximately $500,000. The purpose of these actions was to obtain money, which gave me a sense of validation.

Based on my misstatements, the JPM fund for victims wired me approximately $750,000 on or about May 20, 2024.

On or about November 6, 2025, special agents from the Federal Bureau of Investigation conducted a voluntary interview of me. In that interview, I also stated that the EVCP fund had found me eligible for victim compensation and had paid me $500,000. When confronted with a true and accurate copy of the EVCP letter, I falsely claimed that I had successfully appealed

that decision to the EVCP fund and been found eligible for compensation.

On or about November 2025, in connection with an application to the United States Attorney's Office for the Southern District of New York to defer prosecution of me in connection with this fraud on the JPM fund for victims, I caused my then attorney to submit altered and fabricated emails.

I know that my actions were wrongful, and I accept full responsibility.

THE COURT: All right. Ms. Percival, I noticed that you've been reading from a statement, and that's entirely appropriate. I'm sure you and your attorney wanted to make sure that the statements were exact and correct. But I wanted to ask you, you really did the things that you just told me about?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: Does the government represent that it has sufficient evidence to establish Ms. Percival's guilt beyond a reasonable doubt?

MR. FANG: Yes, your Honor. And as to the interstate wire element, the government can also proffer that the fund administrator and district court that received the emails referenced in Dr. Percival's allocution were located in the Southern District of New York.

THE COURT: All right. And that satisfies venue in the Southern District of New York, as well as the interstate wires, right?

MR. FANG: That's correct, your Honor.

THE COURT: All right. Defense counsel, do you know of any reason why your client should not be permitted to plead guilty?

MR. BLOCH: I do not, your Honor.

THE COURT: And do you have any doubt as to Ms. Percival's competence to plead at this time?

THE DEFENDANT: No doubt.

THE COURT: All right. I find that, based on the proffer of the government and no objection from the defendant, that venue in the Southern District of New York is satisfied.

Final question: Ms. Percival, did you know that what you were doing was against the law?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are there any further questions that either side wants me to ask?

MR. FANG: No, your Honor.

MR. BLOCH: No, your Honor.

THE COURT: All right. Is there any reason why I should not recommend that Judge Vyskocil accept this plea?

MR. FANG: No, your Honor.

MR. BLOCH: No, your Honor.

THE COURT: Sometimes the district judge only gets to see the transcript, and sometimes there is family in support. If there is any at this time, now would be the time to let me know.

MR. BLOCH: Yes, Judge. There is extensive family support. I would note, for purpose of today, Dr. Percival's brother Brian Wolford is here in the audience, flew in from Cedar Rapids, Iowa, to be here. But as will be evident from our sentencing submission, there's extensive family support.

THE COURT: All right. Thank you. Thank you for being here, Mr. Wolford, in support.

On the basis of the defendant's responses to my questions and my observations of her demeanor, I find that she is fully competent to enter an informed plea at this time. I also conclude that she understands the nature of the charge and the consequences of the plea. And finally, I am satisfied that the plea is voluntary and there is a factual basis for it. Accordingly, I recommend that the proffered plea to the information be accepted.

I assume the government will order a copy of the transcript and will submit it to Judge Vyskocil together with any additional paperwork so that she may act on my recommendation.

A presentence investigation report is ordered.

Has a sentencing date been set yet?

MR. FANG: Not yet, your Honor, and the government would request that the Court set a control date approximately 30 days out, specifically for purposes of allowing the district court time to accept the plea, and to exclude time through that date. If the Court is inclined to simply set a sentencing control date at this juncture approximately three months out, the government would not object to that either.

THE COURT: Okay. So why don't we do this. Let us set a control date that is about 30 days out. It's not going to be a sentencing date. Let's do October 16th, which happens to be a Friday.

All right. So the prosecution case summary for purposes of the presentence report is to be delivered to the probation department no later than 14 days from today. Counsel, you should make yourselves available to be interviewed by the probation department with your client no later than 14 days from today.

If I set the control date for October 16th, and the government has asked for an exclusion of time under the Speedy Trial Act until that date, any objection from defense?

MR. BLOCH: No objection.

THE COURT: All right. I grant the exclusion of time until October 16th because I find that the needs of justice outweigh the best interests of the public and the defendant in a speedy trial, based on the need for the transcript to be

prepared and for the parties to present this to Judge Vyskocil and give her sufficient time to review the transcript and set a date for sentencing and determine whether she intends to accept my recommendation.

All right. Anything else we need to do at this time?

MR. FANG: Yes, your Honor. One is, with respect to conditions of release——

THE COURT: Yes.

MR. FANG: ——the government respectfully proposes the following conditions, to which we understand the defense has no objection: a $50,000 bond with one financially responsible co-signer——

THE COURT: Okay. Just a minute.

MR. FANG: Yes, your Honor.

THE COURT: Okay. Hold on a second.

I just have to find the proposal in my papers so I can follow along.

All right. Go ahead, Mr. Fang.

MR. FANG: The government would propose the following conditions: first, the $50,000 bond, with one financially responsible co-signer; travel restricted to the Southern and Eastern Districts of New York, as well as the Middle, Southern, and Northern Districts of Florida, and points in between; defendant to surrender travel documents and make no new applications; pretrial supervision as directed by pretrial

services; the defendant to continue or seek employment; and the government believes it would be appropriate for Dr. Percival to be released on her own signature with remaining conditions to be met in two weeks.

THE COURT: Okay. Two weeks would be September 28th, right?

MR. FANG: That's correct, your Honor.

THE COURT: Okay. Anything to add or any objection to that, Mr. Bloch?

MR. BLOCH: No. Just a clarification. Was that two weeks for the co-signer to sign the bond? Is that——I missed the last——

THE COURT: Yes. And also, I see that under the proposed disposition that it includes that Ms. Percival will surrender all travel documents and make no new applications. I'm just not sure if I heard that also.

MR. FANG: Yes, your Honor.

MR. BLOCH: That's correct. Our understanding was that that means her passport, which she's prepared to do.

THE COURT: Right. Okay. So that she will surrender her passport.

So for the conditions to be met by September 28th, the clarification I will provide is that she can be released on her own signature today. The bond and the co-signer need to be completed by the 28th. Of course, if you do it sooner than

that, that's also fine, but the outside deadline is the 28th. And then also, the travel documents should be surrendered by then if they haven't already, okay? Again, certainly can do it sooner rather than later as well.

Mr. Fang?

MR. FANG: Yes, your Honor. Just one final matter of housekeeping. Because this is Dr. Percival's first appearance before a judicial officer, it may be appropriate to issue a Rule 5(f) warning.

THE COURT: Okay. I am about to do that. That's the rest of my script.

MR. FANG: Understood. Thank you.

THE COURT: Okay. Based on my review of the information, the pretrial services report, and the agreement of counsel, I accept the recommendation. Ms. Percival will be released on the following conditions: $50,000 bond cosigned by one financially responsible person; travel is restricted to the Southern and Eastern Districts of New York, as well as the Middle, Southern, and Northern Districts of Florida, and points in between; she will surrender all travel documents and make no new applications; pretrial supervision is as directed; she is to either continue or continue seeking employment. For the co-signer and bond and travel documents, she can be released on her own signature today, with remaining conditions to be met by September 28, 2026.

I have already recommended that Ms. Percival's guilty plea be accepted, and also that I have excluded time until October 16th under the Speedy Trial Act.

Ms. Percival, if you fail to appear in court as required or if you violate any of the conditions of your release, one, a warrant will be issued for your arrest; two, you and anyone who signed the bond will each be responsible for paying its full amount, and that is $50,000; and three, you may be charged with a separate crime of bail jumping, which can mean additional jail time and/or a fine. In addition, if you commit any offense while you are released, in addition to the sentence prescribed for that offense, you will be sentenced to an additional term of imprisonment of not more than ten years, if the offense is a felony, or not more than one year if the offense is a misdemeanor. This term of imprisonment will be executed after any other sentence of imprisonment is completed.

And finally, while you're awaiting sentencing, and Judge Vyskocil's acceptance or not of the proffered plea, I also must warn you not to have any contact with or engage in any intimidation of potential or designated witnesses or potential jurors, not to engage in any intimidation of any court officer, and not to engage in any conduct that would obstruct any investigation by law enforcement. Of course, if you don't agree with my decision, you have a right to appeal it.

I'm now going to give my oral 5(f) order. It will be followed by a written order, and will be entered on the docket once a case is opened and a docket number has been assigned.

I direct the prosecution to comply with its obligations under *Brady v. Maryland* and its progeny, to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution. Possible consequences for noncompliance may include dismissal of individual charges or of the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations and will fulfill them?

MR. FANG: Yes, your Honor.

THE COURT: All right. And Judge Vyskocil has not set a conference date or any other date in this case yet.

MR. FANG: That's correct, your Honor.

THE COURT: All right. Anything else that we need to do at this time?

MR. FANG: Not from the government, your Honor.

MR. BLOCH: Judge, three brief points.

One, I wanted to clarify, with respect to the co-signer, that she lives and will sign in Florida, and I wanted to make sure that there is no objection or issue with that.

THE COURT: I guess this might have been something that would have been clarified before, that she's going to be supervised out of Florida; is that right?

PROBATION OFFICER: Yes.

THE COURT: Okay. Unless the government has some objection?

MR. FANG: No objection.

MR. BLOCH: Thank you, Judge.

Second, I wanted to note for the record that Dr. Percival has——throughout the negotiations that we had with the government, we have made clear that Dr. Percival is willing to pay to the government the full amount of restitution——that was even before today——which is $776,031. That offer was discussed, has not been accepted yet by the government for whatever reason. She has arrived today with a check for $776,031 for purposes of paying full restitution today.

THE COURT: That is something to take up with the government. It is possible and likely that because, under the law, the Court must order restitution regardless, that is not something I would be taking care of at the proceeding today.

MR. BLOCH: Understood, your Honor. I just wanted the record to be clear on that.

And finally, with respect to the October 16th control date, is it possible for Dr. Percival to be excused for an in-person appearance for that?

THE COURT: It's just a control date; it's not an appearance, it's not a conference date. I'm not setting any dates for Judge Vyskocil to hold a hearing. That's just a control date.

MR. BLOCH: To be clear, Dr. Percival does not need to be here on October 16th.

THE COURT: There is no proceeding set for October 16th at this time, okay? It is really because I have to exclude time under the Speedy Trial Act. It is excluded until October 16th.

MR. BLOCH: Thank you, your Honor.

THE COURT: Okay. All right. Anything else we need to do at this time?

MR. FANG: No, your Honor. Thank you.

THE COURT: All right. Anything else?

MR. BLOCH: Not from the defense. Thank you, your Honor.

THE COURT: All right. Thank you very much. We are adjourned.

THE DEFENDANT: Thank you.

o0o